All right, you may proceed. Thank you. Good morning. Ward Clay appearing on behalf of the appellant Cruz Torres-Gonzalez. May it please the court. This is a case that we have conceded error by the government with regards to an essential element of the jury instruction upon which charge my client was convicted was 18 U.S.C. section 1001. And it is conceded error in the sense that depending upon how you determine what the law was or what the law is, Bryan v. United States Supreme Court case in 1998 indicated that in order to convict or to someone had willfully violated a criminal statute, the minimum is that they were aware consciously of the unlawfulness of their conduct at the time that they did the act. Let's talk about this, because this is, as you can tell, we asked for some supplemental briefing. And I'm curious, you argue that Bryan is clearly irreconcilable with the circuit's case law, but I'm just trying to figure out how do we overrule binding circuit precedent that postdates Bryan? And it seems like that's what the Mazio court concluded. I'm trying to figure out why we shouldn't follow Mazio. Well, I guess the question is one of interpretation of what was settled law at the time in terms of the plain error analysis. If we look at what was the law, the law was Bryan v. United States. And so essentially what we have is Tatatoyan, if I'm pronouncing that correctly, which was incorrectly decided. And so the question is, are we asking the court to overrule Tatatoyan or just determine that in fact it was wrongly decided matching up with Supreme Court precedent? And so I understand that it's not within this panel, I guess, unless it was an inbound decision to overrule a prior decision of the Ninth Circuit. But to a certain extent, if you evaluate what the government concedes now was the law and has been the law since 1998, then Tatatoyan is just wrongly decided. And so at some point in time, it's going to have to be reconciled. Well, I don't know. I mean, Bryan says as a general matter, prefaces the statement, as a general matter, when used in criminal context, a willful act is one undertaken with a bad purpose. In other words, in order to establish a willful violation of a statute, the government must prove the defendant acted with said to be a word of many meanings whose construction is often dependent on the context of which it appears. When we take that into consideration, I just don't know if it's as clear as you say it is that it's completely overruled, is inconsistent with our precedent. Well, the precedent in this circuit is all you have to do is with knowledge, do the act deliberately. In other words, but not by accident or mistake or something like that. What the Supreme Court's saying, though, is that they put the low bar on a criminal statute to say that when the word willfully is asserted in a statute, that you have to show, it's the government's burden to show, the knowledge of the unlawfulness. And they also distinguished it from other cases, a heightened sense of proof, where you actually have such as some federal tax statutes, where you actually have to show, the government has to show, that the person know the specific statute that they were violating. So that's why... Well, let's just... How was he prejudiced here? Let's assume he... How was he prejudiced? Well, for one thing... Especially if we can take into account his prior, I guess, specifically. That he'd been convicted of this same exact offense previously of lying to a Border Patrol office, the same almost identical circumstances, by giving a false name. How can we say that he didn't know this was unlawful? Well, how he was prejudiced was he did not receive a fair trial. And the reason he didn't receive a fair trial was defense counsel, trial counsel, which I was not trial counsel, but basically had one hand tied behind his back when fighting and defending this case, because now he was not able to argue an element that the Ninth Circuit didn't recognize. In other words, the patterns or instructions didn't have that element involved. So from the perspective of his argument to the jury about the prior conviction... Well, that's all. I don't think you talk about that in your brief. Right now, I'm just... I think the question before us is, even if we accept and don't follow the say that he was prejudiced when he had clearly knowledge of the unlawfulness of what he was doing, how are his substantial rights affected? Well, I would disagree that there was evidence that he knew what he was doing was unlawful. Because if you look at this context... How could he not know what he was doing was unlawful when he had... I mean, he'd been convicted of four prior convictions, one of them asserting the very... With the exact same conduct that occurred here. Is that clear in the record? I mean, the thing is, I understand that the documents were somehow obtained, but they weren't introduced in the prior... In the trial. So it's kind of like we're creating evidence to conclude that he had been convicted of the very identical thing when I couldn't find that in the record. So I guess that's a question for the government, because I'd like to see where that was in the record of this trial, that he was the exact same offense. Well, as far as what's in the record, it only was... It came out that he had the conviction in 2000. And what was the... What was in the record about what the conviction was? It was during the... It was initially brought out on direct exam of the defendant, excuse me, the appellant who testified. But counsel tried to limit going into the facts and circumstances of it by a pretrial motion. And then when the government cross-examined Mr. Cruz Torres-Gonzalez, I do recall the record having him saying, well, isn't it true that you were convicted of giving a false name in 2002? And he actually denied it. He said that, no. I don't think he said no. He just... He didn't answer it completely, but he acknowledged that there was a prior, but he talked about how his lawyer said, we should just do this, kind of. Right. It was just a plea bargain. And again, I try to point out in my supplemental letter brief that the realities of these kinds of circumstances were that there was no written plea agreement. The plea took place 18 days before the trial. It was based upon a superseding information that was filed. But that's why I wanted to find out, can we take judicial notice of that? And I think the response was that we could. Well, the court has the discretion to. That's true. The court can take judicial notice. The question is, and I think it was brought up by Justice Boardlaw, that there really isn't anything in the record to support all of that, that the jury had the benefit of reviewing, if you will. And so the question is, and it is a jury question, did he have... When was the prior... Yeah, it is a jury question, but when was the prior conviction? 2002. So what did he... I guess then we have to get into, because it was after 1998, when he pled guilty to that, was he pleading guilty to knowing that it was unlawful to do so, a knowing violation, because under... If that was in California? Right. And at that point in time... We were operating under the wrong law at that point in time. Exactly. Correct. So he wouldn't have had... The element would not have been included, a knowing violation. That is absolutely true. That, in fact, he would not have been disclosed that knowledge of unlawfulness was something the government would have to prove. And so his admitting that he gave a false name was merely essentially admitting a defective statute, if you will. They did not get a complete... But in looking at the record, though, that if you take judicial notice of that record of the 2002, it looks like he waived his right to an indictment when he did that, and he signed a form that expressly stated he had knowledge of the charges against him. Well, knowledge of the charged information, which the superseding information... Which was making a false statement. Which was making a false statement. That's it. And he knew that was unlawful. But he testified at trial that he did not know that that's what he was doing. That, in fact, the only evidence at the trial was that he was... There was a plea bargain, if you will, at the last minute where he was immediately sentenced to six months in the Bureau of Prisons. So there was not that deliberation, if you will, in the mind of saying, oh, okay, I understand that this is unlawful because I lied about my name. Which is really bottom line, if you want to look at this case compared to some other cases in the Ninth Circuit that have dealt with a false statement. Again, there's no warnings to him, either at the Border Patrol Processing Station, on the written form he signed, which is this I-826 form. It is just, here, put your name down and if you want... And you choose which of the three options you want to do. And he wanted to be voluntarily returned to Mexico. So, you know, it has to be conceded that he lied, okay? But just lying to a federal agent is not enough to convict him of the crime. So he may have thought in his mind that, well, if I just lie about my name, you know, maybe I'll escape prosecution and be voluntarily returned to Mexico. But did he know specifically, and the government has to prove, at the time that he said that to the Border Patrol agent, that he was committing another federal offense other than deported alien found in the United States? I'm just trying to make sense, just from a practical perspective and looking at the law, how do we say, under plain error review, that he, you know, that he didn't have knowledge that this was a crime, that it was unlawful. When he had been convicted of exactly the very same offense of lying to a Border Patrol officer about his name, given him a different name, he was found guilty. And it was for the same thing, given a false statement of his name. I mean, we can say that he didn't know it was unlawful. Well, we're assuming that, you know, this 15-year-old case, which at the time I think it was 10, 12 years old or so, that there was some collective memory at the time he made the statement that if I lie about my name, it's going to be a federal offense. But collective memory with his history of 20, you know, times being deported, four convictions, another charge but being acquitted, asserting the same defense that he had here. I just, it's years with all of that in between. Well, the test would be, is the evidence overwhelming at trial that you can essentially say, well, it's no problem, there was sufficient evidence in the record to say he knew that it was unlawful. But just by the nature of the discussion, it's not overwhelming evidence that's being presented to the jury or to this court that he knew specifically when he told his name was Ron Ruiz Gonzalez to the Border Patrol agent that he knew that his conduct was unlawful. So I think if you want to measure it that standard, I mean, maybe there's a suspicion, maybe there's probable cause, but it doesn't rise to the level beyond a reasonable doubt. But it's under a plain error review. Well, plain error review, that's correct. And again, we have to kind of move down the steps, I guess, with regards to whether it substantially affected his rights in this regard. And I just take back to the issue of you should have been given the opportunity at trial to address this issue. It was assumed by everybody that you couldn't argue this. You couldn't object to an argument, in fact. The counsel could not. That, hey, my client didn't know that it was unlawful to do this. He would have been barred by the prosecution's objection, the court would have sustained it. You can't argue that. So what you've removed from this trial is an essential element of the offense. And that's why this jury instruction in itself is, you know, we're not talking about whether or not you can bring in prior inconsistent statements or anything else. We're talking about an element of the offense. And that's why I asked, one other thing I wanted to mention before my time runs is the issue of the harmless error analysis. Now, it's a little bit of a stretch, but, you know, his counsel did object to the government filing this 1001 charge after the first trial and in a hung jury. He objected that it was vindictive prosecution and that, indeed, that charge should be dismissed. The question, which I don't think I found any authority to support it, but, is can that jury instruction at trial? And it's sort of a stretch argument, but it may give basically a higher standard, let's say the harmless error standard, more credence because now, although he didn't object to the instruction that was given by the trial judge, he did object to the charge actually being filed or brought before the court. You're arguing it was preserved. That's your argument. But it is a stretch, I agree. Yes, but I did want to make the argument. I didn't brief it, but it sort of occurred to me. In terms of this judicial notice, the only thing I saw is this, I saw the superseding information, but there's no, I don't know what he actually did in this to be, I guess he pled guilty. Was it a straight up plea? Straight up plea before, I believe, the district court. I didn't recognize the district court judge's name in that, so I didn't know if it was a magistrate or not, but it was an immediate sentencing. So it must have been a plea to a district court judge with immediate sentencing of six months in prison. And we know that from the docket sheet somewhere? Just from reading through the dockets. There's no plea agreement, so we don't know what the factual basis is. There was no plea agreement. There was no written plea agreement filed, and there was no- But there's a waiver of indictment that tells- Waiver of indictment. That says it's because he gave a false statement. I mean, because he gave the border patrol a different name. Well, the waiver of indictment just waived the probable cause part of this equation, correct? Because it didn't allow, it didn't force the government to take it to a grand jury. Grand jury. Yeah, that's all that does. So, to a certain extent, and there's no plea colloquy. There's no transcript. We don't know- Not a plea colloquy. That's the other thing. I mean, well, so this isn't actually my real problem with all of this, is that shouldn't the government have brought this in in the trial, so we'd have a full understanding of what exactly happened? Yes, and that is how my client was prejudiced, that he didn't get to defend this issue at trial. All right, thank you. You're well over your time. I'm well over time, so I thank you. Good morning, Your Honors. Faith Devine, appearing on behalf of the appellee, United States of America, and I would like to first address the plain error issue, which seems to be the issue driving this case. I don't, let's start with what do we do with Brian and the fact that our model roles seem not, our model jury instructions seem not to have yet caught up with this 1998 decision. You think that it should, I take it from your brief and your statements about Brian, that the government thinks at least that somehow, and I really want you to help me with this, that there is a reconcilable conflict, and under Miller v. Gammie, we should say that our law, at least in that Tetoan case, was overruled by not Brian so much as SAFCO, which reinstated Brian's role, and also AJOCO, where we, I was on that panel, we did the exact same thing based on a government. So where do we stand now? I mean, is this something where, if we think Brian is correct and it applies to this statute, we need to go on bonk to do that? Do you think that we should just say that it's clear that a knowing violation is required based on SAFCO? What does the government think about this? Let me start with your first question, which was that the model jury instructions, whether they conform with Brian, it's my understanding that the model instructions have been amended, and that since the Solicitor General has conceded error on the 1001 and 1035, that going forward, the instructions do include that element that the jury has to find that the with maybe a few cases, and I know that there are this case and two other cases are being argued this week. So I think that the model jury instruction has been corrected in that regard. So, you know, so if that's true, I didn't realize that, but if that's true, then there's really no reason to go on bonk because they've already changed the law. Correct. And I don't think we're arguing here that you should go on bonk. So you agree now that a knowing violation is the standard that's reflected in our model jury instructions, and so given that, that you want to, that's why you're focused on plain error? Correct. Exactly. And because, and as Moseo points out, and I know that the panel struggled with it a little bit before they came to this conclusion, but the actual concession of error didn't really change circuit precedent and Titoian still is circuit precedent. So under the plain error review, the second prong is not met. And, but I, that shouldn't affect this case because I think in this case, the stronger argument is the third and fourth prongs. And that's where I get to the, what I wanted to address with respect to the substantial prejudice here that defendant claims. And also I think it's important, the fourth prong, which is that even if this court were to reverse, we would go back, we would have another trial, and the defendant would never be able to argue that he didn't know that it was a violation of law to use a false name to a border patrol agent, because in the trial, in a new trial where that issue is the main focus of the trial, the government would be able to use the conviction documents from the 2002 conviction. What are the conviction documents? Do we have those? That, those are the documents that the court asked to take judicial notice of. The, the superseding information and the judgment, the criminal judgment. Right. But do we have any look at the superseding information? It states that he made a, he provided a false name. No, but if no, wait, the superseding information. Yeah. The superseding information states on or about August 4th, 2002, the defendant willfully made a false fictitious fraudulent statements in that he did represent and state to border patrol agent Weaver that his name was Cruz Gonzalez Perez, where in truth and fact, as he then well knew that that representation was false. So that's the exact, almost identical to the indictment, superseding indictment in this case. So he already pled guilty to the same conduct. So he knows that that conduct violates federal law. Why didn't the government use these documents in the trial? Well, as I recall, we were actually prohibited from introducing into evidence, his prior convictions from 2002 and 2004, and because the district court felt that they were too old and that they would be prejudicial. So how can we consider them now? Well, but he introduced it in his case. He opened the door when he testified on direct examination, and that was what the district court had said. If the defendant introduces it and opens the door, then the government can then raise it. And so it was, it was introduced in direct examination. We could have used it for impeachment, but we couldn't introduce it into our case in chief. So, but you, but this document, one of my colleagues had to request, you know, obtain, did independent investigation to get this document. And then, which it seems to me, the government could have just as well done back at the time of the trial and introduced it after he opened the door. Correct. But he opened the door and then he admitted that he had made the false statement. At that time, I don't think the actual facts underlying that conviction were that relevant, but if we were to go back and retry this case, now that, that those facts are relevant, I think that we would actually be allowed to introduce it into evidence in our case in chief. And so at that time, the, I believe that the impeachment was, the question was, so you've been convicted of a false name. And then the defendant then tried to explain it by saying, oh no, that was just a plea bargain that my attorney told me to do. But he really has admitted, he introduced it in his direct examination. He stated that he had been pled guilty to a false statement. Then when the prosecutor asked him on a cross-examination about pleading guilty to a, providing a false name, he gave a very evasive answer. So I think that that information is there. And I think that even if we had just that evidence, the jury still could have convicted and found that he knew that it was a violation of law to make a false statement. I don't think that the, that the jury instruction required the, I don't think the jury was required to find beyond a reasonable doubt that he knew that providing a false name to a Border Patrol agent was a crime. I think the fact that he knows that it's a crime to make a false statement, and I think that the jury still could have concluded even under the new jury instruction that he was guilty of the 1001 violation. But there's also another reason I think why the court should take judicial notice of this document. And it's because if you look at the third and fourth prong, and the burden shifts to the defendant to show that he has suffered prejudice. And then even if he shows that he suffered prejudice, then there's still the fourth prong where the court has to look at the entire proceedings and decide whether or not reversal is appropriate. And here, if you look at, and I was looking at the Johnson case, Johnson versus United States. It's almost similar where in that case, the issue was the materiality. There was a problem with the jury instruction on materiality. And the Supreme Court found that in analyzing the fourth prong, that there's no plausible argument that the defendant could have made, or the appellant in that case could have made, to show that the materiality element would not have been found beyond a reasonable doubt. So I think it's almost, we have a very similar circumstance. But see, what I don't understand is the government should have made the case. I mean, both, I mean, Brian was in effect, the jury was instructed incorrectly. The government didn't put in its proof of what he, what Torres was convicted of. Why isn't that fundamentally unfair? Well, I don't think that the extra document was necessary for the jury to find that this defendant knew that making a false statement to a border patrol agent was a violation of law. And so I think that the jury, based on the evidence, even without the conviction documents from the 2000 case, could have easily concluded that. The other thing is, if you are arguing failure to meet the third and fourth prongs, why didn't the government present this document? I mean, I don't think it's our court's place to go dig up evidence. I mean, you should have brought it as a motion. If you thought it weighed in this decision, shouldn't you have brought it as a request to us to take judicial notice, if you think it supports your case? I probably should have, Your Honor, and I didn't. I know. And so that's what's giving me a huge pause here over this, you know, sort of this If we were to vacate the false statement conviction as a practical matter, what would happen? It will not affect the outcome, because the 1326 case was the more serious offense, so that drives the sentence. The sentence wouldn't change, and he's already served his sentence. So I don't think it would make any difference as to the outcome and the proceedings. So we're spending 30 minutes discussing this, discussing something over which it makes no difference ultimately. It wouldn't even change his supervised release? Has he been deported again? The supervised release is driven by the 1326 charge. Okay, so it doesn't. So why did you add it in, the stata curia? I mean, I don't want to elicit improperly your strategy, but... Well, I think it's important in that providing the false name was evidence of the 1326 offense, but it also was a separate crime that he committed when he came into the United States. And in the first trial, the defendant had made an issue out of whether he even signed that document and tried to suggest that the government had been sloppy or the Border Patrol agents had been sloppy about putting a document in the file, and so it became a major issue in the first trial. So I think that at that point, we wanted to make sure that we separate out that there's two crimes here. Let me ask you, I just want to make sure I understand your position regarding Mazzeo. I mean, should we follow Mazzeo or not? Yes, we believe that you should follow Mazzeo. So play that out. So if we follow Mazzeo, we would say that there was no plain error? Correct. Then, similar to Mazzeo, you would conclude that in this case, there's no plain error under the second prong. I guess if you conclude that there's no plain error, I guess you don't even need to reach the third and fourth prong. And you would want us to follow Mazzeo in the alternative, go over these third and fourth prongs. Correct, because that would be the easier, it's technical, it's a technical argument, but it's correct. And so you would not have to address, probably wouldn't even have to address the conviction documents or the admissive, or whether or not you could take judicial notice of them. And do you think Mazzeo was correctly decided then? If you're asking us to follow Mazzeo, I'm just trying to figure out, because you conceded error. Correct. And is that inconsistent? It's following, in your recommendation that we follow Mazzeo, is that inconsistent with your concession of error? It's not inconsistent, because if you see in our letter brief, just because the government concedes error does not mean that the law has changed. And so it's really the discretion of your honors and the circuit to decide whether or not the law has changed. So isn't Mazzeo just wrong in light of our model jury instruction? I mean, it says, okay, willfully means deliberately and with knowledge, but that only applies to 1035, and it doesn't apply to 1001, but it does. Well, I don't think that, as I understand it, model jury instruction also does not change. No, it doesn't, but we obviously change our model during, we have a big committee that does this and looks at all the law. We obviously did it because we thought that was the law. Correct, but I don't, I think if you look at the precedent. I think that's your hardest argument, because Mazzeo is just plainly wrong, in the state of the law today, and this is direct appeal, is Mazzeo's wrong about 1001, right? No, I don't believe it is, only because what Mazzeo, Mazzeo doesn't say that, what it says is, is that because an en banc panel has not changed over, overruled to Toyin, then it cannot be clear and obvious under current law. There is no plein air. That's what Mazzeo says. I don't think Mazzeo actually reaches any conclusion as to what is the correct or incorrect law. It just says that at the time of the appeal. Well, I don't know if you read the last paragraph in that case. It's pretty clear, not accepting that that's the rule under 1001. Who is this panel? I just don't understand why they would have done that. I hope I'm not on this panel. Okay. I think, I understand that Mazzeo can be interpreted that way, but I don't, I guess it's the government's position that what Mazzeo is saying is, is that under those circumstances. It's not plein air. I understand that. Okay. I mean, we're not trying to say that the law should be any different than what we have conceded in the Adjoko case. All right. All right. Thank you. You can have a minute to rebut if you have something to say. I don't think we're talking about the law changing. I think we're finally recognizing what the law is. The law hasn't changed. Bryan was the law. And the panel on Tatoyan got it wrong. And so, to not follow through with, you know, looking at that as far as the perspective of the error analysis, if you will, I think that's what we actually need to do. That's why I think Mazzeo is wrong, is because they're saying, well, the circuit law was this. Therefore, we can't do anything under the plein air standard. But that's not, that's not the correct error. But the question is not what the circuit law was. What was the law of the country? What was the law of the Supreme Court? And that's the, our position is that it's, it's with the Bryan. And that's why the court can take action in this case and reverse and vacate the conviction. Just another point. My client actually has served 35 months, it sounds like, with it, but he's still being held in custody on an OSC violation in front of Judge Thompson awaiting disposition of this court on this case. An OSC violation? Yes. Order to show cause. He was on a prior 1326 conviction. He was on supervised release when this offense took place. And so Judge Thompson has that case and has not decided whether or not to sentence him to any time on that. So right now he's essentially starting to accrue time on that OSC violation without having been sentenced. Is that based on this 1001 conviction or the 1326 conviction? The prior 1326 conviction. And I think it was maybe a 1001 conviction. Why would he be holding disposition of that based on this appeal? Because, you know, my theory is, I tried to get him to sentence him, but my theory is, is that that he wants to see if this panel is going to reverse or not. Reverse the 1326 or the 1001? The 1001. Right. And maybe the 1326. I don't know, but he wants to find out what's going to happen. I don't see what 1001 conviction has to do with, what did he do? Return and enter again? You mean after this case? No, I mean with the OSC. Oh yes, it was, he returned to the United States without permission. And I can't remember the year of it, of the case, but I think it was maybe two years before this case occurred, but I'm guessing at that point. So he was on supervised release for three years and, and then. But he's served his complete supervised release. As of now, he's had, well, I think it's. He's served the time, but he's on an OSC for. Right. He hasn't served the violation yet because he hasn't been sentenced yet. He's still waiting to be sentenced on another case. See what I'm saying? That he's already served his time on this case. According to the judge, the judge has sentenced him to 35 months with the good time credits, but he's being held. He's not even in the Bureau of Prisons. He's actually still being held by the U.S. Marshal in a facility out in, I think, Arizona, waiting for Judge Thompson to sentence him on the OSC. All right. Thank you, Counsel. Thank you. U.S. v. Torres-Gonzalez
judges: Noonan, Wardlaw, Murguia